**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nikki Robinson, | No. CV-25-00048-PHX-SPL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Nikki Robinson seeks judicial review of the denial of her application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). Before the Court are Plaintiff's Opening Brief (Doc. 12), Defendant Commissioner of Social Security Administration's Answering Brief (Doc. 16), Plaintiff's Reply Brief (Doc. 17), and the Administrative Record ("AR") (Docs. 8–11). Upon review, the Court reverses the Administrative Law Judge's decision (AR at 12–40) and remands for further proceedings.

## I.    BACKGROUND

Plaintiff filed a Title XVI application for supplemental security income on May 19, 2021, for a period of disability beginning April 7, 2017. (AR at 15). Her claims were initially denied on June 9, 2022, and again upon reconsideration on January 26, 2023. (AR at 15). Plaintiff testified at an administrative hearing on November 15, 2023 (AR at 15, 41–58), after which the Administrative Law Judge ("ALJ") found Plaintiff was not disabled. (AR at 12–40). On December 3, 2024, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the agency's final decision. (AR at 1–6).

The Court has reviewed the medical evidence in its entirety and will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following medically determinable impairments: fibromyalgia, mixed connective tissue disease, Raynaud's syndrome, peripheral neuropathy, tachycardia, migraine headaches, lupus, and pulmonary embolism. (AR at 18). Ultimately, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since May 19, 2021, the date the application was filed." (AR at 33).

## II.    LEGAL STANDARD

A person is considered "disabled" for the purpose of receiving social security benefits if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Id*. To determine whether substantial evidence supports a decision, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id*. (citation omitted). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520(a)). The claimant bears the burden of proof on the first four steps,

and the burden shifts to the Commissioner at step five. *Id*. At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id*. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id*.

## III.    ANALYSIS

Plaintiff argues the ALJ erred for two reasons: (1) the ALJ failed to articulate clear and convincing reasons to discount Plaintiff's symptom testimony, and (2) the ALJ failed to adequately articulate the supportability and consistency of opinion evidence. (Doc. 12 at 2). The Court will consider each argument in turn.

### A. Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ erred by rejecting her symptom testimony. (Doc. 12 at 10–16). An ALJ performs a two-step analysis to evaluate the credibility of a claimant's testimony regarding subjective pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation omitted). If the claimant presents such evidence then "the ALJ can reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citation

omitted).

A finding that a claimant's testimony is not credible "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (quotation marks omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted); *see also Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.").

Although the ALJ must specify what testimony he finds not credible, *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005), he is not required to perform a "line-by-line exegesis of the claimant's testimony" to meet the clear and convincing standard, *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). Additionally, if the ALJ's decision is made "with 'less than ideal clarity,' a reviewing court will not upset the decision on that account 'if the agency's path may reasonably be discerned.'" *Alaska Dep't. of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004); *see Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (applying this standard to social security); *Moreno v. Comm'r of Soc. Sec. Admin.*, No. CV19-5792 PHX DGC, 2020 WL 6610990, at *8 (D. Ariz. Nov. 12, 2020)("While the ALJ's reasons for discounting [an] opinion may have been scattered across [the] report, 'all of the puzzle pieces were present, even if not neatly assembled

- 4 -

before the Court.'" (citation omitted)).

After considering the evidence, the ALJ found that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR at 28). Plaintiff asserts that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's symptom testimony for several reasons. (*See* Doc. 12).

First, Plaintiff argues that the ALJ erred by failing to consider the combined effect of all the impairments compared to the symptom testimony. (*Id.* at 12). Plaintiff cites to 20 C.F.R. § 416.923(c), which states that to determine "whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law," the ALJ must consider the "combined effect" of the impairments. (*Id.*).[1] It appears the ALJ did consider the combined effect of the impairments. The ALJ stated that in determining the RFC, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (AR at 25). Regarding the symptom testimony, the ALJ concluded that Plaintiff's "medically determinable impairments" could not be expected to cause the symptoms. (AR at 28). Though the ALJ addressed each of the medical conditions, it does not appear that the ALJ compared Plaintiff's symptoms to each of the conditions on their own. Rather, the ALJ considered all of the medical evidence in comparison with all of Plaintiff's symptoms. The Court does not find error in how the ALJ assessed the medical evidence with respect to Plaintiff's symptom testimony.

---

[1]     To the extent Plaintiff is alleging error at Step Two, the Court does not find that the ALJ erred at Step Two. Plaintiff argues that the ALJ "found that connective tissue disease was nonsevere because it was not accurately diagnosed as systemic lupus erythematosus and there were no objective signs of SLE." (Doc. 12 at 11). Further, Plaintiff argues that even if there were not signs of SLE, there are many kinds of connective tissue disorders. (*Id.*). As Defendant points out, the ALJ found that mixed connective tissues disease was a severe impairment. (Doc. 16 at 5 (citing AR at 18)). Therefore, Plaintiff has not shown that the ALJ erred at Step Two.

Next, Plaintiff argues that the ALJ mischaracterized her treatment for degenerative disc disease as conservative, and therefore erred in rejecting her symptom testimony on that basis. (Doc. 12 at 12–13). The ALJ stated that Plaintiff's treatment with medication and injections was "conservative." (AR at 28). However, Plaintiff points out that she was being treated with "Botox injections, increasingly high doses of opioids, and sacroiliac injections." (Doc. 12 at 12). The ALJ also wrote that in April 2022, a surgeon determined that Plaintiff did not require surgical intervention. (AR at 28 (citing AR at 1893)). However, Plaintiff points out that she was not a surgical candidate "largely because she would need to stop using blood thinners to have surgery or to undergo epidural steroid injections." (Doc. 12 at 13). Indeed, the provider noted in April 2022 that Plaintiff "had DVTs and pulmonary emboli due to her lupus condition resulting in hypercoagulability. She is on blood thinners." (AR at 1893). Further, the provider reported that he did not see anything requiring "any type of surgical intervention" and continued to discuss treatment options that would allow Plaintiff to stay on her anticoagulation medication. (*Id.*). The ALJ cited another physician's treatment notes from August 2023[2] which stated that surgery was unnecessary. (AR 28 (citing AR 2908)). Plaintiff argues that the statement does not bear on the severity of the degenerative disc disease because Plaintiff was consulting with the neurosurgeon about hip pain. (Doc. 12 at 13). Plaintiff emphasizes that the fact that her "spinal disease did not cause her hip pain does not mean the hip pain did not exist" and therefore, the opinion that surgery is unnecessary is not a clear and convincing reason to discount Plaintiff's symptom testimony. (*Id.*).

The Court agrees that the ALJ failed to explain how the nature of the treatment contradicts Plaintiff's symptom testimony. The fact that the providers did not recommend surgery, in this case, does not constitute a clear and convincing reason to reject Plaintiff's symptom testimony. *See Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (finding error when the ALJ discredited symptom testimony, in part, based on improvement from

---

[2] The ALJ writes that that the physician's opinion was from June 2023. (AR at 28). The treatment notes are dated August 21, 2023. (AR at 2908).

conservative treatment when the symptoms did not improve); *Loniza v. King*, No. 23-00352 MWJS-RT, 2025 WL 435943, at *6 (D. Haw. Feb. 7, 2025) ("[W]hen an ALJ rejects [a claimant's] severity testimony on the ground that the claimant received conservative treatment, the Court may affirm that reasoning only if the administrative record contains substantial evidence that the treatment was in fact conservative—that is, that at least one more aggressive treatment option was available.").

Finally, Plaintiff argues that the ALJ's findings that Plaintiff's "pain and fatigue from a systematic connective tissue disorder were not readily apparent on gross physical examination" is not a clear and convincing reason to discount Plaintiff's symptom testimony. (*Id.* at 14). Plaintiff testified that she experienced physical pain in her head, neck, shoulders, back, pelvis, hip joints, legs, and thighs, on average, at a level eight out of ten. (AR at 51). She testified that she can walk or stand for about ten minutes (AR at 50), and can go grocery shopping for twenty or thirty minutes, but has to lean on the cart or use a motorized scooter. (AR at 53).

In rejecting Plaintiff's symptom testimony, the ALJ highlighted that although there were clinical findings in the medical evidence related to pain, there is also evidence showing good function on examination. (AR at 28). The ALJ continued to cite treatment records where Plaintiff was reported to have normal strength, normal gait, and normal range of motion. (AR at 28–29). But as Plaintiff points out, "[p]ain that is aggravated by performing an activity over a time span of multiple minutes is not necessarily visible on gross examination of a person sitting relatively still in a physician's office." (Doc. 12 at 15). Moreover, the ALJ cited many examples of clinical findings showing, tenderness, pain, discomfort, and antalgic gait. (AR at 27). The ALJ does not explain how the normal function examinations contract the evidence of clinical findings or Plaintiff's symptom testimony. *See Smartt v. Kijakazi*, 53 F.4th 489, 495 (9th Cir. 2022) ("[A]n ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence 'fully corroborating' every allegation within the subjective testimony.") (alteration omitted).

The Court finds that the ALJ erred in rejecting Plaintiff's symptom testimony relating to her pain. The ALJ's characterization of Plaintiff's treatment for degenerative disc disease as conservative is not supported by substantial evidence in the record. In addition, the ALJ highlighted findings of good function on examination, but again, did not explain how these findings contradicted Plaintiff's testimony. Therefore, the Court finds error.

### B. Medical Opinion Evidence

In January 2017, the SSA amended the regulations concerning the evaluation of medical opinion evidence. *See* Revisions to Rules Regarding Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). Because the new regulations apply to applications filed on or after March 27, 2017, they are applicable here. The new regulations, which eliminate the previous hierarchy of medical opinions, provide in relevant part as follows:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency . . . .

20 C.F.R. § 404.1520c(a).

Regarding the "supportability" factor, the new regulations explain that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." *Id*. § 404.1520c(c)(1). Regarding the "consistency" factor, the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id*. § 404.1520c(c)(2).

The Ninth Circuit confirmed that the "changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion."

*Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Thus, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. With that said, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id*. at 792 (internal quotation marks, alterations, and citations omitted).

Here, Plaintiff argues that the ALJ erred by finding that Plaintiff's primary care physician, Christaine Sanburn, M.D.'s opinion was not supported by the medical evidence. (Doc. 12 at 17). In a questionnaire dated August 16, 2021, Dr. Sanburn opined that Plaintiff could sit for 2–3 hours in a workday, stand or walk for one hour in a workday, and should be permitted to shift positions every forty minutes. (AR at 1573). Dr. Sanburn also estimated that Plaintiff would likely be absent from work 3–4 days per month and specified that Plaintiff would require "significant constant change in positioning." (AR at 1574). Upon review, the ALJ found that Dr. Sanburn's opinion was "not persuasive as she provided no support for it, only noting the diagnoses and the claimant's symptoms." (AR at 31). Further the ALJ explained that the "medical evidence does not support limitation to the sedentary exertion level, a sit/stand option, or work absences as it shows conservative treatment and good function on examination, including normal strength and gait." (AR at 31). The ALJ also states that the medical evidence does not support "time off task as it does not show objective findings of fatigue." (AR 32).

As to supportability, Defendant argues that the evidence in the questionnaire does not support Dr. Sanburn's opinion and Dr. Sanburn did not provide an explanation for her opinion. (Doc. 16 at 10–11). Dr. Sanburn's opinion takes the form of a two-page questionnaire. (AR at 1573–74). However, "there is no authority that a 'check-the-box'

form is any less reliable than any other type of form; indeed, agency physicians routinely use these types of forms to assess the intensity, persistence, or limiting effects of impairments." *Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017). In addition, "the supportability of a physician's opinion necessarily still includes a review of that doctor's treatment notes, not just the narrative explanation on the form." *Curtin v. Comm'r of Soc. Sec. Admin.*, No. CV-21-00790-PHX-GMS, 2023 WL 387202, at *6 (D. Ariz. Jan. 25, 2023). The ALJ did not assess supportability by reviewing the treatment notes, and instead, simply stated that Dr. Sanburn "provided no support for [her opinion], only noting the diagnoses and the claimant's symptoms." (AR at 31). Therefore, the ALJ's supportability analysis was not supported by substantial evidence.

As to consistency, Defendant argues that the ALJ provided substantial evidence showing that Plaintiff had good function on examination.[3] (Doc. 16 at 11). As is explained above, the examinations showing normal gait and strength do not contradict the limitations that Dr. Sanburn provided. Dr. Sanburn's opinions were focused largely on Plaintiff's "headache," "neck pain," "lumbar pain," and "shortness of breath" and the fact that Plaintiff could not stay in one position for more than forty minutes at a time. (AR at 1573–74). The ALJ did not explain why these examinations were inconsistent with Dr. Sanburn's opinions. In addition, there is evidence in the record that is consistent with Dr. Sanburn's opinion. The ALJ discussed the diagnostic findings of degenerative disc disease of the cervical and lumbar spine as well as clinical findings showing pain and tenderness. (AR at 26–27). Although it is up to the ALJ to resolve conflicting evidence in the record, it is not clear how the evidence provided is inconsistent with Dr. Sanburn's medical opinion. *See Thomas v. Barnhart*, 278 F.3d 947, 956–57 (9th Cir. 2002) ("When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict.") (citation omitted). The ALJ's rejection of Dr. Sanburn's opinion is not supported by substantial evidence in the record. Therefore, the Court finds error.

---

[3] Defendant also argues that the ALJ's determination that the record did not "show objective findings of fatigue" is an accurate recitation of the evidence. (Doc. 16 at 11 (citing AR at 32)). Even so, the Court still finds error.

## IV.    CONCLUSION

Finding error in the ALJ's evaluation of Plaintiff's symptom testimony as well as the opinion from Plaintiff's physician, this case will be remanded. "[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citation omitted). Indeed, Plaintiff requests "remand for reconsideration of the evidence." (Doc. 12 at 2, 18). In considering "whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules," the Court agrees that further administrative proceedings would be useful. *Id*. at 1103–04.

Accordingly,

**IT IS ORDERED** that the final decision of the Commissioner of the Social Security Administration is **vacated and remanded** for further proceedings consistent with this order.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and terminate this case.

Dated this 27th day of February, 2026.

Honorable Steven P. Logan
United States District Judge

- 11 -